CHARLES P. COLLIER v. W. L. MONGER.

No. 14,994   (89 Pac. 1011.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Construction.* The language of an oil-and-gas contract will be given its ordinary and commonly understood meaning where no reason appears for doing otherwise.

2. ——— *Agreement to Drill a Well—Provisions Construed.* A contract to drill an oil-and-gas well contained a provision which reads: "The second party agrees to drill one well for oil or gas . . . and to go to the Mississippi limerock unless a good quantity of oil or gas is struck or otherwise, at the option of the first party. . . . Second party agrees to do the drilling in good, workmanlike manner, or no pay. . . . First party agrees to give . . . one dollar per foot for drilling, provided that it is done in good, workmanlike manner." *Held,* that the second party was entitled to the contract price for drilling the well when he reached the Mississippi limestone, if the work was done in a good and workmanlike manner.

3. WORDS AND PHRASES—*"Good and Workmanlike Manner."* To drill a well in a good and workmanlike manner does not include placing it in a complete condition for permanent preservation by placing therein a packer and tubing and removing salt water therefrom.

4. EVIDENCE—*Demurrer.* When the plaintiff has produced testimony tending to support all the material allegations of his petition a demurrer to the evidence should be overruled, regardless of the issues made by the answer and the reply.

5. ——— *Burden of Proof.* Where the defendant states facts in his answer, by way of defense to, or in avoidance of, the averments in the petition, the burden is upon him to establish such facts, and the plaintiff is not required to disprove them in his case in chief.

6. ——— *Variance.* Where the question of a variance between the pleading and the proof is first raised by a demurrer to the evidence, it will not be regarded as fatal when it appears that the party objecting was not surprised, misled or prejudiced thereby.

Error from Labette district court; THOMAS J. FLANNELLY, judge. Opinion filed April 6, 1907. Reversed.

Collier v. Monger.

## STATEMENT.

On August 27, 1904, the parties to this action entered into a written contract, which reads:

"Article of agreement between W. L. Monger, of Mount Pleasant, Iowa, party of the first part, and Charles P. Collier, of Mound Valley, Kan., party of the second part.

"The said second party agrees to drill one well for oil or gas any place upon the S W 1-4, section 33, Labette township, Labette county, Kansas, that the said first party may designate, and to go to the Mississippi lime-rock unless a good quantity of oil or gas is struck or otherwise, at the option of the first party. The said second party agrees to do the drilling in good, work-manlike manner or no pay. The said first party agrees to give the said second party one dollar per foot for drilling, provided, that it is done in good, workmanlike manner, and to place $1000 in the bank at Mound Valley, Kan., to guarantee the payment of said work here guaranteed by said second party. The said second party agrees to commence work just as soon as he can finish one more well on the contract where he is working. Should he fail to commence drilling for said first party by September 20, 1904, this contract may be canceled by said first party by giving notice of the same in writing."

On October 1, 1904, in pursuance of this contract, the plaintiff, Charles P. Collier, commenced drilling the well. At the depth of 520 feet he encountered a stratum of sand containing a large quantity of gas and a flow of salt water. The sand proved to be about 100 feet thick. This stratum was understood to be the oil-and gas-producing sand of that territory. Down to this point the well had been cased, but no casing was used in this sand, for the reason that it would effectually cut off whatever oil or gas might be there. The plaintiff, when asked the reason for not casing here, while giving his testimony on the trial said:

"Ques. Mr. Osborn asked you why you did n't case this water out. Why did n't you case this water out? Ans. Because in other wells in that vicinity they found the oil-sand where this sand was, and it was

generally understood that this sand took the place of the oil-bearing strata, and if I had cased that sand off I would have cased off the oil-sand and would have been liable. I would be casing off the very thing I was looking for—casing off what I was hired to drill for.

"Q. Explain to the jury what you mean by casing it off. A. By putting casing down by this strata onto a foundation on the next strata and leaving the water on the outside of the casing."

The drilling was continued to the Mississippi limestone, which was found at a depth of 765 feet. Near the bottom of the well a strong flow of gas was found. All idea of preserving any deposit which might exist in the sand-stratum above was at once abandoned and attention given to the best means of protecting the gas last found from the deleterious effects of salt water from above. It was decided after consultation that this result could be most satisfactorily accomplished by the use of a packer, tubing, and other appliances used therewith. The plaintiff, while a witness, when asked to describe a packer, said:

"Ques. What took place then? Ans. They furnished tubing and a packer and I put it in the well.

"Q. You can just explain to the jury how you placed that in the well. What did you do? Tell them what you did. A. A packer is a tool that is used to keep water or cave from getting to the gas. It is about two feet and eight inches long, with a rubber piece in the center about fourteen inches long. We put about forty feet of perforated tubing below the packer, and then located the packer, and then put tubing from the packer to the top of the well."

"Q. After the packer was put in the well, explain to the jury how you got the salt water out of the well. A. If there is sufficient gas in the well, it will flow it out. If not, you have to use the pump.

"Q. How did you find this well? A. There was enough gas to flow the water out."

By the use of these appliances the well was completed and placed in satisfactory condition.

When it had been decided to use the packer and tubing instead of ordinary casing, Martin, who was the

Collier v. Monger.

agent of the defendant, W. L. Monger, and in charge of the well for him, entered into an oral contract with the plaintiff whereby it was arranged that the defendant should furnish the packer and other appliances, and the plaintiff, by the use of his machinery, was to complete the well for the sum of thirty dollars, and keep the machinery in place until the materials were provided. Plaintiff was compelled to wait a number of days before the appliances were furnished, during which time his machinery was reasonably worth the sum of twenty-five dollars per day. The drilling of the well was finished October 12, 1904. On November 3, 1904, Collier commenced this action, claiming $765 for drilling the well under the written contract, and twenty-five dollars per day for the use of his machinery, under the oral contract, from October 12, 1904, to November 3, 1904. The well was completed December 28, 1904.

On the trial, when the plaintiff rested his case, a demurrer to the evidence was sustained, and a judgment for costs rendered in favor of the defendant. To this ruling of the court the plaintiff excepted, and brings the case here for review.

*Joseph P. Rossiter,* for plaintiff in error.

*Osborn & Osborn,* and *E. L. Burton,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: It appears quite clearly from the evidence that the plaintiff fully performed the conditions of the written contract on his part. It is admitted by the defendant's answer that an oral contract was made, as alleged, except that the request to hold the machinery at the well is denied. This allegation of the petition, however, is established by the testimony. It seems, therefore, that the demurrer to the evidence should have been overruled.

The ruling of the court is justified by the defendant

upon the grounds: (1) That the action was prematurely brought as to the first cause of action, which is founded upon the written contract; and (2) that there is a fatal variance between the pleading and the proof as to the second cause of action. In support of defendant's first proposition it is argued that the written contract when properly interpreted means that the plaintiff must complete the well before he is entitled to pay for the drilling; that the well was not completed until after the action was commenced, and therefore it was prematurely brought. The language of the contract, as it is ordinarily understood, does not seem to justify this conclusion. It simply requires the plaintiff to do a certain amount of drilling in a good and workmanlike manner. Nothing is said about casing, packing, tubing, or anything else which indicates the completion of the well. If this language, when used in an oil-and-gas contract, has the significance here contended for, that fact does not appear in the evidence. No reason appears for giving it any peculiar signification.

The language used by Mr. Justice Mason in the case of *Betterment Co. v. Blaes, ante,* p. 69, seems quite pertinent here. In that case he said:

"This argument ignores the distinction between completing a well and drilling a well. These phrases cannot be said, as a matter of law, to mean the same thing. There was evidence in this case from which it might be found that a well was drilled but not completed, if these words are to be given their ordinary meaning, and there is nothing in the contract itself or in the undisputed facts that requires any unusual significance to be attached to them." (Page 75.)

As we interpret this agreement, the contract price for the drilling became due and payable on October 12, 1904, when the work was completed.

We are strengthened in this conclusion by the act of the parties when they mutually agreed that plaintiff should receive extra compensation for work done after the drilling was finished. This oral contract indicates

that the parties then regarded the work provided for by. the written contract at an end.

It is contended that the defendant's answer avers a failure to complete the work, in that plaintiff did not case out the water and had not put in the packer and tubing which were necessary to the proper completion of the well; also, that the plaintiff in his testimony admitted these averments, which constituted the issues upon which the case was tried. This, however, amounts merely to an admission that the plaintiff neglected to do a thing which by the provisions of his contract he was under no obligation to perform. Besides, it is not incumbent upon a plaintiff to meet all the issues made by the various pleadings in the case before he can safely rest. When he produces some evidence tending to support the material allegations of his petition he is beyond the reach of a demurrer to his evidence. The issues made by the affirmative averments in the answer and the reply must be met in the later stages of the trial. If it was the duty of the plaintiff to case out the water and put in the packer and tubing, or do anything more than drill the well, such duty existed because of something outside and independent of the conditions of the written contract, and the burden was upon the defendant to aver and prove such collateral facts. As against the demurrer we think the plaintiff was entitled to judgment on his first cause of action.

As to the second cause of action, under the evidence the plaintiff is also entitled to judgment, unless cut off by the variance of which the defendant complains. The petition alleges that the oral contract upon which the plaintiff seeks to recover was made with the defendant, while the proof shows that it was made with Martin, who was the defendant's agent. This difference between the pleading and the proof is claimed to be a fatal variance. This much-abused plea, once a formidable obstacle in the administration of justice, has been shorn of its old-time vigor and strength, so that it is now unavailing unless really meritorious. It

is confined in its application to statutory limitations, as defined in the civil code, which reads:

"No variance between the allegations in a pleading, and the proof, is to be deemed material, unless it have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as may be just." (Gen. Stat. 1901, § 4567. See, also, *Crane v. Ring*, 48 Kan. 58, 60, 28 Pac. 1010; *Railway Co. v. Green, ante*, p. 504.)

In this case the defendant, after executing the written contract, placed Martin in charge of the work on the well, and then left the state and was absent until after the oral contract was made. A part of the oral agreement is admitted by him in his answer, which shows that he was advised of its existence before the pleadings were filed. On the trial no objections were made to the evidence because at variance with the pleadings, but objections were made on other grounds. If the question of variance was presented to the district court at all it was in the general demurrer to the evidence.

The objection seems to be without merit. The defendant could not have been surprised, misled or prejudiced in the slightest degree. He knew when he filed his answer to the petition that the oral contract had been made with Martin, and also knew at that time what the averments of the petition were. Martin was agent for the defendant, with full authority to make the contract. To sustain the demurrer would dispose of the case upon a doubtful technicality, where the defendant is clearly liable. Such a practice cannot be encouraged. We regard the variance as immaterial. The demurrer should have been overruled.

Several cases have been cited in support of the contention of the defendant on the question of variance,

but the facts involved in them differ materially from the facts in this case; and it does not appear that they were decided where a statute similar to ours was in force, and we do not therefore regard them as authority.

The judgment is reversed, with direction to allow the motion for a new trial and proceed with the case in accordance with the views herein expressed.