### CHESTNUT & SMITH CORPORATION et al. v. AMIS.   (No. 1885.) *

(Court of Civil Appeals of Texas. El Paso. March 25, 1926. Rehearing Denied April 15, 1926.)

Mines and minerals ⬤⟼79(3)—Lease reserving equal one-eighth part of all oil, gas, and gasoline produced, manufactured, and saved from premises, held construed to mean one-eighth of manufactured products, not merely one-eighth of value of gas delivered at wells into pipes.

Lease providing for delivery to credit of lessors, free of cost, into pipe line equal one-eighth part of all oil, gas, casing-head gas, and gasoline produced, manufactured, and saved from leased premises, payable monthly as same be sold, held construed to reserve to lessor one-eighth of manufactured products, and not merely one-eighth of value of gas delivered at wells into pipes.

Appeal from District Court, Eastland County; Elzo Been, Judge.

Suit by T. J. Amis against the Chestnut & Smith Corporation and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Goggans & Allison, of Breckenridge, and Sayles & Sayles and Turner, Seaberry & Springer, all of Eastland, for appellants.

Burkett, Orr & McCarty, of Eastland, for appellee.

WALTHALL, J. We adopt as our own the statement of the nature and result of the suit as found in the brief for appellants, other than Chestnut & Smith Corporation.

Appellee, Amis, brought this suit against Chestnut & Smith Corporation and certain assignees of the Gordon Petroleum Company, whose names it is unnecessary to enumerate, but who are all appellants herein, alleging:

That on April 11, 1923, he and his wife ex-

---

⬤⟼For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted June 9, 1926.

ecuted and delivered to said Gordon Petroleum Company an oil and gas lease on certain lands in Eastland county, Tex., which lease contained, among other things, the following:

"To deliver to the credit of lessors, free of cost, in the pipe line to which lessee may connect the well or wells, the equal one-eighth part of all oil, gas, casing-head gas and gasoline produced, manufactured and saved from the leased premises, payable monthly as same is sold."

That under said lease the lessee drilled a well which produced "large quantities of gas." That by proper conveyances all of appellants, other than Chestnut & Smith Corporation, became the owners of said lease and gas well, "and are now the owners and holders of same, except as to the defendant Chestnut & Smith Corporation, who is purchasing the gas from said well, but who refuses on account of the claims of the other defendants to pay to plaintiff (appellee) his just share of the proceeds arising from the sale of said gas." That Chestnut & Smith Corporation was manufacturing from said gas so taken an enormous quantity of gasoline, but had failed and refused to pay appellee his share and part thereof. That under the terms of said lease he was entitled to a one-eighth part of all gas, casing-head gas, and gasoline produced, manufactured, and saved from said premises, but that the defendants were claiming he was entitled to only one-eighth of one-fourth of said gasoline. That said claim was made by virtue of a contract entered into by defendants, as assignees of the original lessee, with defendant Chestnut & Smith Corporation, which contract he (appellee) did not sign, ratify, or confirm, and by which he refused to be bound. That certain proceeds from the sale of said products were being held by Chestnut & Smith Corporation by way of stakeholders, which appellee asked, on final hearing, to be ordered paid him, and that he be adjudged to be the owner of a one-eighth part of the gas and gasoline produced from and manufactured from said well, and that his title thereto be quieted, and that Chestnut & Smith Corporation be ordered to each month thereafter pay him one-eighth part of the proceeds arising from said gas and gasoline manufactured and sold from said premises.

Appellants, other than Chestnut & Smith Corporation, answered, setting up the contract between S. J. Knepley, as receiver of the Gordon Petroleum Company, which was attached to their pleadings and by the terms of which, it was alleged, the gas from the well in question was by the then owners of the well sold to said Chestnut & Smith Corporation; that by virtue of their ownership they were entitled to receive the proceeds from the sale of any gas produced from said well, less such royalty as appellee was entitled to receive under and by virtue of said lease contract. It was further more specifically alleged that under the terms of the Chestnut & Smith Corporation contract the gas produced from said well was sold for the express consideration of 25 per cent. of the net amount received by Chestnut & Smith Corporation for the gasoline produced from gas received from said well, plus one-half of the price received by Chestnut & Smith Corporation for residue or stripped gas sold from the plant where the raw gas was utilized. It was further alleged that this price was the usual and customary price paid in the Ranger-Eastland field for gas of like grade and quality and that said price was reasonable. It was further alleged that, under the terms of the lease declared upon by appellee, he was entitled only to one-eighth of the total sale price for said gas and that appellants were entitled and ought to receive judgment for the remaining seven-eighths of said sale price. Judgment on this basis was asked against Chestnut & Smith Corporation for the amount shown by its answer to be due.

Appellant Chestnut & Smith Corporation answered, admitting the purchase of the gas under the contract mentioned, and the utilization of said gas in the manufacture at its plant of gasoline therefrom. It set out in detail the amounts received from the sale of the manufactured product, and also the amount received from the sale of residue gas, and offered to turn over the purchase price, 25 per cent. and 50 per cent., respectively, of said funds to such of the parties and in such proportions as the court might determine. Said appellant also asked that certain other claimants be brought in.

A trial was had before the court on an agreed statement of facts, and a judgment rendered in favor of appellee, construing the royalty called for in the lease to mean one-eighth of the proceeds from the sale of the manufactured or refined gasoline as contended by appellee, instead of one-eighth of the sales price of the raw gas at the well prior to its refinement, as contended by appellants. The court also filed certain conclusions of law based on the agreed facts.

To the judgment appellants duly excepted, gave notice of appeal, a timely appeal bond was filed, and the record is now properly before this court for review.

## Opinion.

The agreed statement referred to is lengthy, and, for brevity, we omit transcribing same in full, but will, as we proceed, transcribe or make reference to such parts thereof, in connection with the matter then under consideration, as we deem necessary.

Appellants present two assignments of error, as follows:

"First. The court erred in construing the contract between T. J. Amis and wife, as lessors, and Gordon Petroleum Company, as lessee, to mean that the lessors were to receive as royal-

ty from the production from said land the full one-eighth part of all the gas, casing-head gas, and gasoline saved and sold from said leased premises, and upon such construction of the contract to hold that plaintiff was entitled to a full one-eighth part of the proceeds from the sale of all gasoline made from the gas produced from said premises, and a full one-eighth part of the proceeds of all the gas sold from said premises not manufactured into gasoline, notwithstanding the fact that the lessee manufactured no gasoline from said gas, but simply sold the casing-head gas to a gasoline manufacturing concern, to wit, Chestnut & Smith Corporation, at the usual and customary price for casing-head gas at the well. And in so entering judgment the court erroneously denied this defendant judgment for $3,614.20.

"Second. The court erred in holding and decreeing that the defendant Chestnut & Smith Corporation should pay to plaintiff a full one-eighth of the proceeds of all the gasoline made and sold from said premises and should continue so to pay plaintiff as long as it continues so to take said gas and manufacture same into gasoline, and should also pay to plaintiff one-eighth of the proceeds from the sale of all residue gas sold by plaintiff, notwithstanding the fact that under the terms of the lease contract lessor T. J. Amis was entitled to receive only one-eighth of the gas and casing-head gas free of cost into the pipe line at the well, and the further fact that lessee, Gordon Petroleum Company, and its assigns, had not manufactured any gasoline, but had simply sold the gas and casing-head gas to the defendant Chestnut & Smith Corporation at the usual and customary price at the well, by reason of which, under the terms of said lease plaintiff lessor was entitled to receive only a one-eighth of the sale price thereof. And in so entering judgment the court erroneously denied this defendant judgment for the sum of $3,614.20, and a judgment decreeing that defendant Chestnut & Smith Corporation should pay to plaintiff only a one-eighth of the proceeds from the sale of gas and casing-head gas sold from said premises and to pay this defendant the remaining seven-eighths of said purchase price for all gas purchased by it in the future."

The one proposition presented under the above assignments is as follows:

"In an action to recover lessor's share of gas obtained from land under a provision in his lease agreeing to 'deliver to his credit free of cost in the pipe line to which the lessee may connect the well the equal one-eighth part' thereof, the lessor is entitled to receive his share, as measured into the pipe line which connected with the well, at the price or value of the gas sold at that place, and not the value or price that was obtained for it by the refinery at some distant place on the pipe line to which it was transported and refined."

The question presented is the proper construction to be given the lease contract between appellee, Amis, and the Gordon Petroleum Company, in determining the amount of appellee's royalty, and the price to be paid therefor, which provides, in part, as follows:

"(2) To deliver to the credit of lessors, free of cost, in the pipe line to which lessee may connect the well or wells, the equal one-eighth part of all oil, gas, casing-head gas and gasoline produced, manufactured and saved from the leased premises, payable monthly as same is sold."

The contention of appellants, as expressed in their proposition, is that the lessor is entitled to receive his share, as measured into the pipe line which connected with the well, at the price or value of the gas at that place, and not the value or price obtained for it on the pipe line to which it was transported and refined.

The lease contract does not recite in words that the delivery of the proceeds of the well or wells were to be made "into the pipe line at the well," as stated in appellants' second assignment of error, and other places in their brief. It is only by a construction of the quoted paragraph of the lease that such could be its meaning. If the lease contract clearly evidences the intention of the parties that the lessor should have the equal one-eighth of the gasoline, as well as an equal one-eighth of the oil, if gasoline is manufactured or separated from the gas taken from appellee's premises, in that event the judgment of the trial court must be sustained. If we correctly understand the contents of the raw material as it comes from the ground at the well, gasoline, as a finished or refined product, is not run into the pipe line at the well, as it comes from the well with gas and is conveyed to the refinery plant for separation.

The paragraph of the lease contract above quoted speaks of the part to be delivered to the lessor as the "equal one-eighth part of all oil, gas, casing-head gas and gasoline produced, manufactured and saved from the leased premises." To us, the lease contract, by its terms, expresses that a refining or separating process at some place is provided and that the part or parts of the product produced from the premises when "manufactured and saved" is, then and there, as separated into its component parts, to be delivered to the credit of the lessor, and the lease contract not indicating any part or parts or amount after the product from the premises is manufactured and saved, other than the equal one-eighth, it seems to follow that the equal one-eighth of the manufactured products would be meant as that to be delivered and at that price paid for.

One part of the lease in question provides that:

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their executors, administrators, successors, or assigns."

By proper conveyances appellants, other than Chestnut & Smith Corporation, became the owners of the lease in question. None of the appellants, except Chestnut & Smith Corporation, have at any time manufactured any gasoline from the premises in question.

Chestnut & Smith Corporation, under a contract with the Gordon Petroleum Company, the latter acting by and through S. J. Knepley, its receiver, by an order of the United States District Court, purchased and has been taking, and at the trial was taking, quantities of gas from the premises. In that contract Knepley was called the seller and Chestnut & Smith Corporation was called the buyer, and in the contract the buyer agreed to buy "all casing-head gas and all other gas productive of gasoline * * * produced by * * * gas wells now located upon" said land, the contract stating other matters of agreement between the seller and buyer which we need not here state, more than it was agreed, that the price set forth in said above contract between Chestnut & Smith Corporation and Gordon Petroleum Company is a reasonable price and was the usual and customary price paid for gas in that field by purchasers of gas of the kind and quality so produced in said well; that Chestnut & Smith Corporation laid a pipe line to said well, and that the sale price of all gas taken and utilized under said contract up to May 1, 1925, had been paid out to respective owners, except the sum of $3,614.20, the amount in dispute here; that appellee had been paid in full for his one-eighth of the sale price of the gas.

The trial court concluded as a matter of law, and upon which the judgment is based, that appellee is entitled under the lease contract to a full one-eighth part of the proceeds from the sale of all the gasoline made from the gas produced from said premises, and a full one-eighth part of the proceeds of all gas sold from said premises or manufactured into gasoline; that is to say, if the gas from said premises is manufactured into gasoline, then appellee (lessor) shall have a full one-eighth part of the proceeds derived from the sale of such gasoline, and a full one-eighth part of the price for which the residue gas is sold, and, in the event such gas should not be manufactured into gasoline, then that appellee should be entitled to one-eighth of all proceeds from the sale of gas and casing-head gas. Further, that appellant Chestnut & Smith Corporation, to whom the other appellants sold said gas for the purpose of having same manufactured into gasoline, should pay to appellee a full one-eighth of the proceeds of all the gasoline made and sold from said premises, and should continue so to pay appellee as long as it so continues.

We think the lease contract between appellee, Amis, and his lessee must necessarily control all questions arising under the lease which affect appellee and that its expressed terms could not in the least be affected by any subsequent disposition made of the lease, or the proceeds from the well. We find no ambiguity in the lease so far as it states the contract. The lessee could have no interest in any of the minerals in the leased land other than that secured under the terms of the lease. We do not, however, understand appellants as controverting that proposition. The interest in the several minerals produced, manufactured, and saved from the well, and retained by appellee, is clearly expressed in the lease and stated to be the equal one-eighth part. That definitely fixes the proportional part of all the minerals retained by appellee. The lease states the disposition to be made of the one-eighth part retained by appellee, "to be delivered to his credit, free of cost." The value of the minerals, whether at the well or in the pipe line to which the lessee may connect the well, is not stated in the lease.

No question, however, is presented as to the quantity or the value of the products sold. The question, under the proposition, is one of construction of the written lease. We have concluded that the construction given the lease by the trial court is tenable, and that the construction contended for by appellants would make the lease contract impossible of performance as to all of its parts.

Appellants refer us to a number of cases all of which we have studied with much care. We have found no case presenting a similar contract. We need not review them.

The case is affirmed.