such situation is presented, and we do not decide it.

We recommend that the fourth question certified be answered to the effect that this statute is mandatory and that a remittitur should be required.

CURETON, C. J. The opinion of the Commission of Appeals answering certified questions is adopted, and ordered certified to the Court of Civil Appeals.

---

MARTIN et al. v. AMIS. (Nos. 875–4627.)

(Commission of Appeals of Texas, Section A. Dec. 1, 1926.)

1. Mines and minerals ⬅️79(3)—Lessor reserving one-eighth of gas or gasoline produced after lessee's sale of gas for one-fourth of gasoline extracted therefrom, held entitled to one-eighth only and not one-half of such one-fourth.

Lessor of oil land entitled to one-eighth "of all oil, gas, casing-head gas and gasoline produced, manufactured and saved" after lessee's sale of gas produced to a corporation which paid it 25 per. cent. of proceeds of gasoline extracted therefrom and one-half of proceeds of residue gas, held not entitled to one-half of such 25 per cent. of proceeds of gasoline; contract for sale of gas not being in legal effect a contract for hire of said corporation to manufacture gasoline as servant of lessee.

2. Mines and minerals ⬅️81—Corporation purchasing raw gas from lessee held not to have assumed lessee's obligation to lessor.

Corporation, purchasing raw gas and agreeing to pay lessee of oil land one-fourth of proceeds of gasoline extracted therefrom, held not to have assumed lessee's obligation to lessor, its interest being only personalty, whereas lessee's interest was an estate in realty.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by T. J. Amis against C. A. Martin and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (283 S. W. 578), and defendants bring error. Judgment of district court and of Court of Civil Appeals reversed, and judgment rendered for defendants.

Sayles & Sayles, of Abilene, and Turner, Seaberry & Springer, of Eastland, for plaintiffs in error.

Burkett, Orr & McCarty, of Eastland, for defendant in error.

HARVEY, P. J. T. J. Amis, being the owner of a certain tract of land in Eastland county, executed to the Gordon Petroleum Company an oil and gas lease covering said tract of land, in the execution of which lease his wife joined. For convenience, this instrument, which was duly executed by lessors and the lessee, will be designated in this opinion as the "Gordon lease"; and Amis and wife will be designated as "lessors," and said Petroleum Company as "lessee" or "Gordon Company."

The legal effect of the terms of such lease (under the authority of the holding of the Supreme Court in the case of Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566, and in a number of other cases) is such that the lessee was granted and became vested with title to all the oil and gas in place as part of the realty, which underlay said tract of land. According to the terms of such instrument, said grant was made to the lessee "for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, power stations and structures thereon to procure, save and take care of said products, * * * so long as oil or gas, or either of them, is produced by lessee in paying quantities."

In consideration of said grant the lessee, among other things, made and became bound by a covenant which is stipulated and set out in said lease in the following words:

"To deliver to the credit of the lessors, free of cost, in the pipe line to which lessee may connect the well or wells, the equal one-eighth part of all oil, gas, casing-head gas and gasoline, produced, manufactured and saved from the leased premises, payable monthly as same is sold."

*[margin annotation: Rylty clause]*

For convenience, this covenant will be designated in this opinion as the "Gordon covenant." It is also provided in the lease that—

"If the estate of either party hereto is assigned—and the privilege of assigning in whole or in part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns."

In compliance with the terms of said lease the Gordon Company entered upon the tract of land and drilled a well, which produced and still is producing large quantities of gas and some oil. Thereafter the Gordon Company, through a receiver duly empowered to do so, and the Chestnut-Smith Corporation, entered into a written contract in which the former is designated as "seller," and the latter as "buyer." This instrument is so lengthy that it cannot be conveniently set out in full here; but, since the decision of this case turns upon its legal effect, we deem it advisable to quote some parts thereof, to wit:

"For and in consideration of the sum of one dollar paid by buyer to seller, receipt of which is hereby acknowledged and the other payments, covenants, stipulations and conditions to be made kept and performed as herein specified, seller hereby grants to buyer the exclusive use for the purpose of manufacturing gasoline, in-

cluding the operation of gas pumps, gas engines, boilers and other machinery and equipment necessary to the conduct of buyer's business, and buyer agrees to use for these purposes all casing-head gas, and all other gas productive of gasoline in paying quantities as hereinafter defined, produced by oil and gas wells now located upon or hereafter drilled or developed upon (the tract of land described in the Gordon lease) and so long as gas is produced from said premises, together with the exclusive right of taking gas from said premises and transmitting same to the plant or plants of the buyer, provided that the seller shall not be required to store any gas, and shall be obligated to deliver to buyer, and buyer shall be obligated to receive only such part of said gas as it may be possible to conserve by exercise of reasonable diligence. * * * Buyer agrees to take gas from well at location. * * * Seller hereby grants to buyer, free of charge, right of way for all necessary gas, gasoline, or other pipe lines and equipment which buyer must install on said premises. Buyer shall have right of ingress and egress on seller's premises for the purpose of installing, maintaining, and removing any necessary pipe lines, meters and other equipment which buyer must install on said premises. Buyer shall have the right of ingress and egress as far as the contract provides between the Gordon Petroleum Company and T. J. Amis. * * * Buyer shall have access to seller's wells and lease lines at all times to make necessary tests for air content and permitted to place pressure on seller's wells and lines to make such test. Seller further agrees that when any wells on said premises are to be taken out of service for repairs or cleaning out, or for any other reason, buyer shall be notified, and if buyer desires, such wells shall be shut off from gas lines delivering gas to buyer. Buyer agrees to complete its pipe line to receive gas from seller with due diligence and shall continuously receive gas from seller after connecting to seller's premises, except as hereinafter provided; provided, however, buyer shall not be required, unless buyer elects, to receive, or pay for any of seller's gas from any well or wells on seller's premises unless the daily settled production of gas from such well or wells is of sufficient volume and sufficient gasoline content per thousand cubic feet to yield not less than 300 gallons of gasoline daily. * * * Buyer agrees to pay for all gas delivered under this grant and contract as hereinafter specified, settlements therefor to be made on or before the 25th day of each month next following this in which the gas is delivered to buyer by seller. All gas delivered to buyer by seller * * * shall be measured by orifice meters of standard make to be installed at buyer's expense. * * * It is agreed that if the meter or meters fail to register correctly for any period, then the amount of gas delivered daily during such period shall be considered as the average per day for the last preceding weekly period for which an accurate reading was had. * * * Buyer agrees to pay seller, and seller agrees to accept in full payment for the amount of gas delivered by seller to buyer each month, twenty-five per cent. of the net amount received by buyer from gasoline provided from gas received from seller * * * and in addition * * * shall pay seller a proportion of the proceeds from the sale of residue gas from buyer's gasoline plant to be determined as follows: (Here follows

provisions for determining the amount of residue or stripped gas manufactured from the wet or raw gas delivered by the seller to buyer under the contract. A quotation of such provisions are not necessary here.) Buyer shall pay to seller for the residue or stripped gas so attributed to seller's leases at a price per thousand feet equal to one-half of the price received by the buyer for residue or stripped gas sold from the plant where seller's wet or raw gas is utilized. * * * It is fully understood that buyer expects to extract gasoline from seller's gas under natural well pressure, and seller agrees to maintain as much back pressure on wells as may, in the judgment of buyer, be necessary up to maximum rock pressure each well now producing or hereafter completed on seller's premises is capable of. If gas pressure of well becomes too low to put gas to buyer's plant under well pressure must install pumps or other suitable equipment and take gas from wells as long as the profits derived by buyer in handling seller's gas will justify. When the natural pressure of seller's wells declines to such an extent that buyer's plant cannot, in the judgment of the buyer, be operated profitably, buyer may, at its option, remove its plant, and thereupon this contract shall terminate as to both parties. * * * It is fully understood and agreed by both buyer and seller that buyer shall be obligated to purchase from seller only such quantities of wet or raw gas as will equal the quantities of residue or stripped gas which buyer can sell from its gasoline plant where seller's gas will be utilized. * * * The several grants, premises and covenants herein shall bind and inure to the benefit of the heirs, representatives, successors or assigns of both parties hereto, and the privilege of assigning same in whole or in part is hereby granted to both buyer and seller. * * *"

By mesne conveyances from the Gordon Company, the plaintiff in error C. A. Martin, and other plaintiffs in error not including the Chestnut-Smith Corporation, succeeded to and now hold all the estate, title, and rights in and to 10 acres of the tract of land described in the Gordon lease, which the Gordon Company acquired and held under said lease. The well that had been drilled by the Gordon Company was situated on this ten acres. For convenience, Martin and his said co-plaintiffs in error, exclusive of Chestnut-Smith Corporation, will be designated as "Martin and others."

[1] The wells of Martin and others on said 10-acre tract have brought to the surface and produced large quantities of gas containing, as part of its natural composition, an element which, after separation from the natural mass by mechanical process, is known as "gasoline." Gas of this kind is known as wet or raw gas. This gas so produced has been delivered by Martin and others to the Chestnut-Smith Corporation in pursuance of the said contract entered into between that corporation and the Gordon Company. From such gas so delivered to it, the Chestnut-Smith Corporation has, by mechanical process, extracted a large quantity of gasoline,

leaving a residue of gas which is known as "residue gas" or "stripped gas." In pursuance of and compliance with the terms of said contract, the said corporation has paid to Martin and others seven-eighths, and to Amis or his order, one-eighth, of 25 per cent. of the proceeds of said gasoline and has paid to Martin and others one-fourth, and to Amis one-fourth, of the proceeds of said residue or stripped gas.

Amis brought this suit on the Gordon covenant against the Chestnut-Smith Corporation, who impleaded Martin and others and the Federal Land Bank, said bank claims an interest under Amis in the subject-matter in controversy. Amis claims and seeks recovery of one-half of said 25 per cent. of the gasoline proceeds—that being one-eighth of the whole amount of gasoline manufactured. His contention, in support of such claim, is that the manufacture of said gasoline, under the circumstances stated, comes within the scope of the Gordon covenant, and that said lessors are entitled to receive, under and by virtue of such covenant, one-eighth of the proceeds of all said gasoline, instead of the one-eighth of 25 per cent. of such proceeds, which they have received.

Martin and others deny this claim of Amis, and assert claim to seven-eighths of the proceeds of 25 per cent. of said gasoline. Because of these conflicting claims, the Chestnut-Smith Corporation has withheld, and still holds subject to the orders of court in this suit, the portion of proceeds of said gasoline which is in dispute here between said rival claimants.

The case was tried in the trial court without the aid of a jury. The case was tried upon an agreed statement of facts prepared and agreed to by all parties, and submitted in evidence on the trial. The trial court rendered judgment which in effect sustains the claim asserted by Amis to one-eighth of the proceeds of all said gasoline manufactured by Chestnut-Smith Corporation, and denied the claim asserted by Martin and others to seven-eighths of 25 per cent. of the proceeds of all such gasoline. The Court of Civil Appeals affirmed such judgment. 283 S. W. 578.

As has been stated, the Gordon lease had legal effect to invest the Gordon Company with an estate in realty. The Gordon covenant relates to oil, gas, and gasoline thereafter to be produced or manufactured by the Gordon Company from the premises. Whether such covenant bound that company to share these products in kind with the lessors, or only bound it to account to the latter for a share in the proceeds of sale thereof, is not important to this discussion. For present purposes, it is sufficient to say that said company was bound to do one of those things. Martin and others hold part of the realty in privity of estate with the Gordon Company, and therefore were obliged to satisfy the Gor-

don covenant as it respects oil and gas, for these commodities were produced by them from the premises; but no gasoline, the commodity to which this suit relates, has been produced by them, except as a component of the gas which they produced. Neither have they manufactured any gasoline from oil or gas taken from the land. Plainly, therefore, unless the manufacture by Chestnut-Smith Corporation, of the gasoline in question, is imputable to Martin and others, such inchoate rights as Amis and wife might have acquired, under the Gordon covenant, in respect to gasoline as a distinct commodity, have not matured or become actionable. Whether or not same may be so imputed depends upon the relation sustained by the Chestnut-Smith Corporation to the raw gas from which the gasoline was manufactured. The contention of Amis is to the effect that the written contract, under which the raw gas was received by such corporation, is in legal effect a contract for the hire of said corporation to manufacture the gasoline as the servant of the producer of the raw gas; but this contention is untenable. The terms of such contract have been stated. An examination thereof leaves no doubt of their legal effect. They evidence an executory contract of sale of raw gas, as personalty. The gas that came into possession of the Chestnut-Smith Corporation, from which it manufactured the gasoline in question, was delivered to that corporation by Martin and others in pursuance of the terms of said written instrument. An executed sale was thereupon effected. Such title or property as Martin and others held in said raw gas passed to said corporation. The former did not own any part of the raw gas when gasoline was manufactured from it; the Chestnut-Smith Corporation held it under claim of ownership. The manufacture of such gasoline, therefore, is not imputable to Martin and others, and they are not chargeable with liability, in that respect, under the Gordon covenant.

[2] Amis, in his pleadings, seeks to hold the Chestnut-Smith Corporation to performance of the Gordon covenant in so far as same relates to gasoline. Said corporation cannot be held to performance of such covenant in any respect, for the reason the corporation does not stand in privity with the estate in oil and gas, in place, that was granted the Gordon Company under the Gordon lease; nor has it assumed any of that company's obligations or become chargeable in equity with performance thereof. Its acquisition of raw gas produced from the realty granted in the Gordon lease occurred after such gas had become personalty by a severance from the soil. It holds no interest or estate in the realty from which such raw gas was produced. The enjoyment by said corporation of rights appertaining to such realty, in the way of surface rights incident to

its purchase of raw gas from the holders of such realty, does not constitute an interest or estate in the oil and gas in place under the land.

We conclude, that Amis and the Federal Land Bank have no lawful claim to any part of the proceeds of said gasoline, beyond the one-eighth part of 25 per cent. thereof; and that Martin and others are entitled to the remaining seven-eighths of said 25 per cent. of such proceeds.

We therefore recommend that the judgment herein rendered by the trial court, and the judgment of the Court of Civil Appeals affirming same, be reversed and judgment be here rendered establishing the rights of the opposing claimants in said proceeds of gasoline, as those rights are indicated herein.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and judgment rendered for plaintiff in error, as recommended by the Commission of Appeals.