## LADD v. UPHAM.

### No. 12800.

Court of Civil Appeals of Texas. Fort Worth.

March 11, 1933.

Rehearing Denied April 8, 1933.

Reynolds & Heare, of Shamrock, for appellant.

H. B. Penix, of Wichita Falls, and W. H. Penix, of Mineral Wells, for appellee.

CONNER, Chief Justice.

This suit was instituted by Paul Ladd in the district court of Wichita county against D. A. Upham to recover the sum of $19,432.81, together with interest and costs of suit.

Omitting jurisdictional and other allegations not necessary to mention, plaintiff alleged that he was the owner of a certain tract of land described in his petition, which, on November 5, 1929, was held and possessed by the defendant, Upham, under a certain oil and gas lease executed by the plaintiff and his wife; that said lease contained the following express conditions and obligations, to wit:

"The lessee shall pay lessor, as royalty, one-eighth of the proceeds from the sale of the gas, as such, for gas from wells where gas only is found, and where not sold shall pay Fifty ($50.00) Dollars per annum as royalty from each such well, and while such royalty is so paid, such well shall be held to be a producing well under paragraph numbered two hereof. The lessor to have gas free of charge from any gas well on the leased premises for stoves and inside lights in the principal dwelling house on said land by making his own connections with the well, the use of said gas to be at the lessor's sole risk and expense. The lessee shall pay to lessor for gas produced from any oil well and used by the lessee for the manufacture of gasoline, or any other product, as royalty one-eighth of the market value of such gas. If said gas is sold by the lessee, then as royalty one-eighth of the proceeds of the sale thereof."

Plaintiff further alleged that from November 5, 1929, to May 1, 1931, the defendant had sold at points off the premises 323,859,600 cubic feet of gas for the sum of $161,929.80, of which amount defendant had paid only the sum of $809.69, thus leaving a balance of $19,432.81 justly due and payable to plaintiff under the terms of said lease, which, together with interest and costs as stated, plaintiff sought to recover.

Defendant answered by a general denial and a general demurrer and certain special exceptions. The court sustained the general demurrer and the special exceptions, and the plaintiff having declined to amend, the cause was dismissed. From the order of dismissal the plaintiff has appealed and assigns error to the court's ruling.

Appellee concedes, as must be done under the rule which obtains in such cases, that the sufficiency of the special exceptions to the petition may be here passed as immaterial without discussion in view of the court's ruling upon the general demurrer. See City of Dallas v. Shows (Tex. Com. App.) 212 S. W. 633; Karnes v. Barton (Tex. Civ. App.) 272 S. W. 317; Bigham Bros. v. Port Arthur Channel & Dock Co., 100 Tex. 192, 97 S. W. 686, 13 L. R. A. (N. S.) 656.

Appellee's contention before us, however, which presumably was adopted by the trial court, is that by the provisions of the lease made by Ladd and wife, the petition "shows on its face that appellant is entitled to one-eighth of the sale price of the gas as measured into the pipe line of the appellee which connected with said well, and not the price or value that appellee obtained for said gas at some place off the premises and at McLean and Alanreed, to which it was transported by him," and that hence the trial court properly sustained the general demurrer. To sustain this contention appellee cites the cases of Martin v. Amis (Tex. Com. App.) 288 S. W. 431; Rains v. Kentucky Oil Co., 200 Ky. 480, 255 S. W. 121; Scott v. Steinberger, 113 Kan. 67, 213 P. 646, 647; Thornton's Law of Oil & Gas, vol. 1, p. 257.

We think the cases cited are distinguishable from the one before us. The case of Scott v. Steinberger appears to be the one most strongly relied on, but in that case the payment of royalties was: "Party of the second part [the lessee] shall deliver to the credit of party of the first part [lessor] free of cost in the pipe lines to which he may connect his wells one-eighth of all oil produced and saved on said premises, and shall pay the market price for same in cash if party of the first part shall so desire, and shall pay to party of the first part one-eighth of all gas produced and marketed."

It was held that the lessor was entitled to receive his share as measured into pipe lines which connected with the wells and not at some distant market that might be found at the end of the pipe line to which it was transported and sold.

In the Scott Case, under the terms of the lease one-eighth of the gas belonged to the lessor upon its arrival at the top of the well and was to be delivered there to him, and the court considered under all of the terms that it would be inequitable for the lessor to demand free of cost the market price of the oil at a distant point to which the lessee had been at large expense in constructing pipe lines, etc.

In the case before us, as appears from a copy of the lease attached to the petition, the lessee was not bound to deliver any part of the gas to the lessor at the mouth of the well. To repeat, the terms of the lease are specifically that "the lessee shall pay lessor as royalty one-eighth of the proceeds from the sale

of gas as such. * * *" In view of these express terms we feel unwilling to say that the lessee would be compelled to deliver to the lessor at the mouth of the well any part of the gas produced. The lessee under the terms of the lease was given full power and control of the entire production and if in order to obtain a better price for the gas he chose to construct pipe lines or otherwise convey it to a point or points beyond the lease and thus receive greater profit, he could do so but could not escape the obligation in favor of the lessor imposed by the terms of the lease.

Mr. Thornton in his Law of Oil & Gas, vol. 1, § 251, refers to the general rule that a deed is construed most strongly against the grantor and in favor of the grantee, but says: "Such is not the case in an instance of an oil or gas lease."

The author further says: "These contracts are looked upon somewhat in the same light as contracts of insurance. By long experience insurance companies have been enabled to draw a policy which is often difficult to determine just what their liability may be. They have their attorneys who have spent years in studying contracts of insurance and the decisions of the courts, until they have become thoroughly versed in all phases of such contracts. On the other hand, the insured is usually without advice when entering into a contract of insurance, and he is almost universally ignorant of the rules of law applicable to such obligations. To such an extent is this true that the courts have adopted a construction, in cases of doubt or obscurity, favorable to the insured. What is true of insurance contracts, may be said to be true of oil or gas leases (if not of mining leases). The lessor usually knows nothing of the law applicable to such instruments; while the operator is usually well informed. Years of experience have shown the operator how to draw a lease giving him many advantages, of which the lessor has not even thought. For this reason the courts have adopted a rule to the effect to construe an oil or gas lease most favorably to the lessor, where its terms can be so construed without doing violence to the language used."

As before stated, attached to plaintiff's petition was a copy of the lease under which the defendant was operating. Unlike leases of a familiar form, there was no reservation of title to gas produced from the well but full right and power of disposition thereto was vested in the lessee; nor was there a provision that any part of the gas was to be delivered to the lessor at the mouth of the well, the terms of the lessor's compensation being expressly fixed as hereinbefore stated that "the lessee shall pay lessor, as royalty, one-eighth of the proceeds from the sale of gas, as such, for gas from wells where gas only is found, and where not sold shall pay Fifty ($50.00) dollars per annum as royalty from each such well. * * *"

Webster thus defines the term "proceeds": "The amount realized from the sale of property."

In State ex rel. Ledwith v. Brian, 84 Neb. 30, 120 N. W. 916, 917, the term "proceeds" is thus defined: "The amount proceeding or accruing from some possession or transaction."

In Dittemore v. Cable Milling Co., 16 Idaho, 298, 101 P. 593, 133 Am. St. Rep. 98, it is said that "'proceeds' is synonymous with product, income, yield, receipts, returns, and, as used in relation to an execution sale, means all that was received from the sale."

In Collier v. Munger, 75 Kan. 550, 89 P. 1011, by the Kansas Supreme Court, it is said, quoting from the headnote, that: "The language of an oil and gas contract will be given its ordinary and commonly understood meaning where no reason appears for doing otherwise."

We conclude that the court erred in sustaining the general demurrer. The judgment must be reversed and the cause remanded.