Julian C. ASHBY et al., Appellants,

v.

**DELHI GAS PIPE LINE CORPORATION,**
Appellee.

No. 15200.

Court of Civil Appeals of Texas,
San Antonio.

Sept. 3, 1973.

Rehearing Denied Oct. 31, 1973.

Sayles & Garrett, Abilene, Cox, Smith, Smith, Hale & Guenther, Inc., San Antonio, Vinson, Elkins, Searls, Connally & Smith, Houston, for appellants.

W. S. Barron, Jr., Geary, Brice, Barron & Stahl, Dallas, Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., San Antonio, for appellee.

KLINGEMAN, Justice.

This is a venue action. Delhi Gas Pipe Line Corporation instituted suit in the District Court of Bexar County, Texas against Julian C. Ashby, a resident of Bexar County, Texas, and Junction Natural Gas Company, a corporation having its principal place of business in Junction, Kimble County, Texas, seeking the following relief: (a) that the court enjoin defendants from causing a breach of a contract and from further interfering with plaintiff's rights thereunder; (b) that plaintiff recover damages from defendants in the amount of $50,000 based on the threatened wrongful termination of the contract; and (c) that the court enter a declaratory judgment determining the rights of the parties under this contract as well as under another related contract. Defendants filed their pleas of privilege to be sued in Kimble County, Texas, relying on Subdivision 14, Article 1995, Vernon's Ann.Civ.St.[1] Plaintiff controverted these

---

1. Suits for the recovery of lands or damages thereto, or to remove incumberances upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof may lie.

pleas asserting that: (1) a dispute over land was not involved, and (2) Article 4656, V.A.C.S.,[2] controlled because plaintiff sought injunctive relief. The trial court overruled both pleas of privilege.

In 1961, Utex Exploration Company[3] entered into a gas purchase contract with Junction Natural Gas Company (hereinafter called the Junction contract) whereby Ashby agreed to sell and Junction agreed to purchase certain quantities of natural gas from specified gas wells located in Kimble County, Texas. Under the terms of such contract, Junction agreed to purchase 250,000 cubic feet of natural gas a day and such additional quantities of gas as would be necessary to satisfy the requirements of its customers.

Junction Natural Gas Company was the holder of a franchise from the City of Junction authorizing it to construct and maintain a gas distribution system within said city and requiring it to supply the residents, business interests and corporations, including the city of Junction, Texas, within the corporate limits of said city, such amount of natural gas as the residents and said entities may require from time to time. Under this contract, Ashby reserves the right to sell to others than Junction any surplus gas over and above the current needs of Junction's customers.[4] This contract contained a provision whereby the seller, Ashby, dedicated to the performance of such contract all gas from certain presently producing horizons on two leases in Kimble County, Texas, described in Exhibit A to such contract, with a further provision that any gas produced over and above the current or miminum requirements of buyer may be sold by seller to others so long as such sales do not jeopardize the ability of buyer to serve its customers as

set out in such contract. The contract is a long-term contract for a term in excess of 20 years. It provides for a graduated sale price of gas, beginning with a sale price of twenty cents per MCF, with increases at stages of approximately five years, with the price of gas beginning on December 31, 1980, to be 30 cents per MCF. The contract provides that the point of delivery of gas to be delivered by seller to buyer shall be at the well head connection or high pressure separator.

On December 22, 1970, Ashby, as seller, entered into a gas purchase contract with Delhi as buyer, hereinafter called the Delhi contract, obligating the parties respectively to sell and buy 1,000 MCF per day per gas well. This contract is made subject to the terms of the Junction contract; and this contract specifically provides that the seller reserves the right to provide the Junction Natural Gas Company its gas requirement as defined in the gas purchase agreement between Junction Natural Gas Company, buyer, and Utex, seller, dated September 3, 1961. This contract is for a primary term of 20 years and also contains a graduated schedule for the price of gas with the sale price of 1,000 cubic feet of gas from initial delivery of gas until July 30, 1975, being 10.5 cents; that at the beginning of the five year period commencing July 31, 1975, and at the beginning of each successive five year period for the term thereof, the price shall be increased over the preceeding period one cent per MCF. This contract provides that the delivery point of gas purchased and sold thereunder shall be at the outlet of seller's separator on the lease or at other mutually agreeably point or points. The contract further provides that the seller commits to the performance of such agreement for the

2. This statute provides in effect that writs of injunction shall be returnable to and tried in the court where such suit is pending.

3. Ashby is the successor in interest to Utex and stands in the shoes of Utex, and in discussing the contract, it will be sometimes referred to as the Ashby-Junction contract.

4. The contract provided that the term "current need" as used in such contract is meant gas in such quantities as to meet the demand made upon buyer by its customers, it being understood that buyer should have the first call on the gas produced by seller from the reserves dedicated therein to supply the needs of buyer's customers.

term thereof all of the seller's interests from certain leases described in an Exhibit A to such contract except such gas as is reserved in Article 3 thereof. The leases listed in Exhibit A are basically the same leases covered in the Junction contract with some minor variances.

On October 12, 1972, Ashby sent a letter to Delhi that Junction had exercised its "right to take all additional gas from the leases and productive horizons covered in gas purchase contract" and such letter further states that "after reviewing the file, it appears to me that I have no alternative except to comply with the request, which will terminate your contract with me."

On the merits, it appears to be Delhi's position that Ashby is not authorized to terminate the contract because the additional gas demanded by Junction will not be used to supply the needs of Junction's customers, in accordance with the provisions of the Junction contract, while Ashby and Junction both contend that the 1961 and 1970 contracts gave Junction rights superior to Delhi's in whatever quantities of gas it needed to supply any of its customers, not just to the city of Junction and Texas Mexican Pipe Line Company pump station.

Delhi contends that Junction has torturously interfered with its contractual relations and alternately that Ashby and Junction have conspired to deprive it of benefits under the 1970 contract and seeks relief in three forms: (a) an injunction enjoining defendants from causing a breach of contract and further interferences with plaintiff's rights thereunder; (b) damages for breach of contract; and (c) a declaration of rights under the contract.

By a single point of error, defendants assert that the trial court erred in overruling their pleas of privilege to be sued in Kimble County for the reason that this case comes within the provisions of Subdivision 14, Article 1995, and, for this reason, should have been transferred to Kim-

ble County. It is defendants' basic contention that the dedication of gas reserves provided for in the contracts created an interest in real estate and that since such dedicated gas reserves are situated in Kimble County, Texas, this case must be tried in Kimble County, under the provisions of Subdivision 14. Plaintiff contends that the trial court properly overruled defendants' pleas of privilege because this is a suit upon a contract to enforce the same and to recover consequential damages based upon the breach thereof, and that a suit of this nature is not within the purview of Subdivision 14, Article 1995, and is not a suit to recover any of the relief as provided in Subdivision 14. In the trial court, plaintiff also contended that the venue of this case was properly in Bexar County, Texas, under the provisions of Article 4656, but they do not brief this contention in this appeal and apparently no longer rely thereon.

■ The question on this appeal is whether the nature of the suit brought by plaintiff comes within the provision of Subdivision 14 of the venue statutes. Where the venue depends on the nature of the suit, such venue is ordinarily determined by the principal right asserted in the plaintiff's petition and the relief sought for the breach thereof. Brown v. Gulf Television Company, 157 Tex. 607, 306 S.W.2d 706, 708 (1957); Wagner v. Pulliam, 361 S.W.2d 470 (Tex.Civ.App.—Eastland 1962, no writ).

Defendants assert that since oil and gas in place are realty, suits to recover the same or to quiet title to them, or to prevent or stay their wastes, must be brought in the county where the subject gas reserves are located. Plaintiff concedes the gas reserves in place are an interest in land, but does not agree that this is a suit by Delhi to recover an interest in gas reserves, or that this is a suit to quiet title to gas reserves, or that this is a suit to prevent wastes. It asserts that the suit here involved is purely a suit by Delhi to enforce its rights to purchase gas pursuant to

its contract, and to recover consequential damages as a result of the breach thereof, and the fact that land is involved in this character of suit does not operate to bring it within the provisions of Subdivision 14.

In Smith v. Hall, 147 Tex. 634, 219 S. W.2d 441 (1949), various royalty owners brought suit in Panola County against R. E. Smith, a resident of Harris County to compel specific performance of a contract entered into between plaintiffs and defendants pertaining to the pooling of royalty interests owned by plaintiff in the Carthage Gas Field in Panola County; an accounting; and for damages. Smith filed his plea of privilege to be sued in Harris County, the County of his residence. Plaintiffs controverted seeking to hold venue in Panola County under Subdivision 14. The Supreme Court, in holding with such case was not within the ambit of Subdivision 14, said:

> "The decisions of this court for many years have been uniformly to the effect that a suit for specific performance of a contract to convey an interest in land, or for damages for breach of such contract, does not come under the provisions of the venue statutes relating to suits for the recovery of lands or damages thereto. Hearst's Heirs v. Kuykendall's Heirs, 16 Tex. 327; Miller v. Rusk, 17 Tex. 170; Cavin v. Hill, 83 Tex. 73, 18 S.W. 323. In Miller v. Rusk, supra, the court said, 17 Tex. at page 172:
>
> > 'Where the suit is upon the contract, whether it be to compel the specific performance of it, or to recover damages for its breach, it is not a suit for the "recovery of land or damages thereto," and consequently is not within the exception and rule of the Statute, which requires the suit to be brought in the county where the land

lies, though it be not the county of the defendant's residence.' "

It is not enough that the suit merely involves land, it must be a suit for the recovery of land or damages thereto, or to quiet the title to land, or to prevent or stay waste on land. This court in Batex Oil Company v. LaBrisa Land and Cattle Company, 352 S.W.2d 769, 773 (Tex.Civ.App. —San Antonio 1962, writ dism'd) said:

> "It is well settled that a suit for specific performance of a contract of sale of real estate, although the judgment therein may result in a transfer of title to real estate, does not come under Exception 14 of the venue statute requiring suits for the recovery of land or damages thereto to be brought in the county where the land is situated."

See also Umbaugh v. Miers, 256 S.W.2d 660 (Tex.Civ.App.—San Antonio 1953, no writ).[5]

Among other cases, defendants' cite a case by this court, Guffey v. Utex Exploration Company, 376 S.W.2d 1 (Tex.Civ. App.—San Antonio 1964, writ ref'd n. r. e.), which involved one of the litigants in this case and some of the gas involved in this litigation. The issue before the court was whether an oral contract for the sale of gas was enforceable under the statute of frauds. There is language in such case which appears to support defendants' position. The court in holding the oral contract not enforceable under the statute of frauds[6] said: "The contract was one for the sale of gas in place, which is a part of the real estate, and is such a contract as is required to be in writing," and "we can see no difference between selling a one-eighth interest in all the oil and gas produced from a well, and the sale of a definite quantity of oil and gas when produced

---

5. "Both sides urge that the contract involved can not be specifically enforced as it involved personal services. This point, however, is deemed immaterial. The action seemingly is one for breach of contract, to which exception 14 of Article 1995 has no application." (Page 661)

6. Then Article 3995, V.A.C.S., now Article 26.01, Business & Commerce Code.

from a well, insofar as the law of conveyance is concerned." The court further held that the oral contract was not enforceable under the statute of frauds because it was a contract not to be performed within one year and therefore required to be in writing. The *Guffey* case was not a venue action and did not, in any way, involve Subdivision 14, and we do not regard it as decisive as to the matter of venue on a suit of the nature here involved to-wit: for the enforcement of a contract, for the construction thereof, and for damages for the breach thereof.

The damages sought by plaintiff in this suit are not damages to land as contemplated in Subdivision 14. In Brown v. Gulf Television Company, supra, the court said: "We are also of the opinion that plaintiff's alternative claim to damages cannot be properly classified as coming within the provisions of Article 1995, § 14. From an early day in this state the language of exception 14 and its predecessor sections has been construed as referring to 'injury to the possession, or to the freehold or estate.'"

Plaintiff also contends that the trial court judgment was correct because the contracts are executory contracts for the sale of severed gas, and as such, are contracts for the sale of personal property, and not realty. In this regard, they assert that each of the contracts obligate the seller and buyer respectively to sell and buy specified quantities of gas at periodic intervals for a fixed term of years; that each of such contracts provide for delivery of the gas at the well head or separator on the lease premises; that the contracts provide that the seller shall be in control and possession of the gas and responsible for it until it is delivered to the buyer; and that the Delhi contract provides that the title to the gas shall pass to the buyer at the point of delivery. In support of this contention, they rely on the holding in Martin v. Amis, 288 S.W. 431, 433 (Tex.Comm'n App.1926, jdgmt adopted), wherein the court, in discussing a contract for the sale of gas stated: "They evidence an executory contract of sale of raw gas, as personalty." The court further stated:

"Its [the buyer's] acquisition of raw gas produced from the realty granted in the Gordon lease occurred after such gas had become personalty by a severance from the soil. It holds no interest or estate in the realty from which such raw gas was produced. The enjoyment by said corporation of rights appertaining to such realty, in the way of surface rights incident to its purchase of raw gas from the holders of such realty, does not constitute an interest or estate in the oil and gas in place under the land."

See also Phillips Petroleum Company v. Mecom, 375 S.W.2d 335 (Tex.Civ.App.— Austin 1964, no writ), where the court stated that the law is well settled that oil and gas, when produced and severed becomes separate property.

Plaintiff asserts that it is no longer open to question that gas under such a contract is not sold at the time that the contract was entered into but the sale takes place at the time of delivery to the purchaser. Texas Oil & Gas Corp. v. Vela, 429 S.W. 2d 866 (Tex.1968); Martin v. Amis, supra; Foster v. Atlantic Refining Company, 329 F.2d 485, 489 (United States Court of Appeals, Fifth Circuit 1964).

■ We do not deem it material in reaching our decision in this case whether the contract for the sale of gas is a contract for the sale of personalty, or realty, as we regard the suit here involved as a suit for the construction of a contract, and to enforce the terms thereof; for damages for the breach thereof; and for incidental relief; and as such, the venue of this suit is not controlled by the provisions of Subdivision 14, Article 1995.

The trial court properly overruled both defendants' pleas of privilege. The judgment of the trial court is affirmed.